Filed 5/24/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| D.C. RANDALL, JR., | D072142 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00014205-CU-OR-CTL) |
| DITECH FINANCIAL, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Reversed and remanded with directions.

Legal Aid Society of San Diego, Inc., Alysson Snow and Kathleen Box for Plaintiff and Appellant.

Locke Lord and Regina J. McClendon for Defendant and Respondent.

I

INTRODUCTION

D.C. Randall, Jr., appeals from a judgment dismissing his operative second amended complaint (complaint) against Ditech Financial, LLC (Ditech) after the trial court sustained Ditech's demurrer to the complaint without leave to amend.  Randall

contends the court erred in its ruling as to his causes of action for violation of the federal Fair Debt Collection Practices Act (FDCPA; 15 U.S.C. § 1692 et seq.)[1] and for violation of the state unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) because these causes of action stated or can be amended to state viable claims.

We conclude the complaint stated a claim under section 1692f(1) of the FDCPA and can be amended to state a claim under section 1692f(6). Consequently, the complaint can also be amended to state a claim under the UCL. We therefore reverse the judgment and remand the matter to the court with directions to conduct further proceedings consistent with this decision.

II

BACKGROUND

A

According to the allegations in the complaint, which we must accept as true for purposes of this appeal (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924), Ditech is a loan servicer and attempts to collect debts on behalf of itself and others in the regular and ordinary course of its business. Ditech services a loan secured by a deed of trust on Randall's home. Ditech began servicing the loan after Randall had defaulted on the loan.

Following Randall's default, the trustee recorded a notice of default with intent to sell. Approximately two years later, the trustee recorded a notice of trustee's sale,

---

1       Further statutory references are to this title of the United States Code unless otherwise specified.

scheduling Randall's home for public auction 21 days later. Randall subsequently received notice the foreclosure sale was postponed for 37 days.

Meanwhile, Ditech advised Randall of the necessary payments to reinstate his mortgage, which included improper fees and charges. Thirty-nine days prior to the foreclosure sale, Randall paid Ditech $20,664.36 in three installments. Ditech accepted the payments, but did not cancel the foreclosure sale.

Randall contacted Ditech multiple times about the foreclosure sale and his mortgage reinstatement. He also enlisted the help of a real estate agent, who called Ditech eight times in the month preceding the foreclosure sale. Two weeks before the foreclosure sale, the real estate agent sent Ditech a written "notice of error" regarding Ditech's failure to cancel the sale. Ditech never replied to the notice.

During a phone call one week before the foreclosure sale, a Ditech representative stated Randall should be current on his mortgage and the foreclosure sale should be cancelled. Although the representative stated Randall would receive a return phone call later that day regarding the foreclosure sale, the phone call never came.

The next business day, Randall contacted Ditech again. The representative he spoke with stated she had no knowledge of the foreclosure sale and could not confirm its cancellation. The representative also refused to provide Randall with his current loan balance. She told him his account needed to be audited before she could provide him with the information. The same day, the trustee informed Randall that Ditech had neither cancelled the foreclosure sale nor communicated anything to the trustee about the reinstatement of Randall's loan.

3

Three days later and one day before the foreclosure sale, Randall filed the instant action. The next day—the day of the scheduled foreclosure sale and 39 days after Randall reinstated his loan—Ditech rescinded the notice of default and cancelled the foreclosure sale.

B

The complaint asserted causes of action for negligence and for violating the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), the Elder and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.), California foreclosure law, the FDCPA, the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.), and the UCL. Ditech demurred to the complaint, arguing the complaint did not state sufficient facts to constitute any viable causes of action.

The court found deficiencies in each cause of action and sustained Ditech's demurrer without leave to amend.[2] As relevant to this appeal, the court found the FDCPA cause of action was incurably deficient because the code section referenced in it, section 1692f(1), does not apply to nonjudicial foreclosure activity and Randall's allegations of overpaying to reinstate his loan were not sufficiently specific. The court

---

[2]    Ditech had previously demurred to Randall's original and first amended complaints. Both of the complaints asserted a UCL cause of action, but neither asserted an FDCPA cause of action. The record does not show the court ruled on Ditech's demurrer to the original complaint, presumably because Randall filed the first amended complaint beforehand. The court sustained Ditech's demurrer to the first amended complaint with leave to amend.

4

found the UCL cause of action was incurably deficient because "there is no underlying wrongdoing alleged."

III

DISCUSSION

"The standards for reviewing a judgment of dismissal following the sustaining of a demurrer without leave to amend are well settled. ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the [complaint] a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the [complaint] states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." ' " (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1251–1252.)

A

Under the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." (§ 1692f.) " 'To state a claim for violation of the FDCPA, a plaintiff must allege that the defendant is a "debt collector"

5

collecting a "debt." ' [Citation.]" (*Izenberg v. ETS Servs., LLC* (C.D.Cal. 2008) 589 F.Supp.2d 1193, 1199.)

1

The complaint alleged Ditech violated section 1692f(1) of the FDCPA, which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." For purposes of this section, " 'debt collector' " includes a person or entity (1) engaged in "any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect … debts owed or due … another." (§ 1692a(6).) The term applies to a mortgage loan servicer if the servicer began servicing the mortgage loan after the loan was in default. (§ 1692a(6)(F)(iii); see *Perry v. Stewart Title Co.* (5th Cir. 1985) 756 F.2d 1197, 1208.)

Here, the complaint alleged Ditech "collects debts, either on behalf of itself or others, in the regular and ordinary course of business." The complaint also alleged Ditech began servicing Randall's mortgage loan after the loan was in default. The complaint, therefore, adequately alleged Ditech was a debt collector for purposes of section 1692f(1).

2

The complaint further alleged Ditech engaged in three types of unlawful debt collection activity. Specifically, Ditech failed to halt nonjudicial foreclosure activity after Randall paid to reinstate his loan, Ditech required Randall to pay a reinstatement

6

amount that was inconsistent with the amount of the payments Randall had missed and included improper fees and charges, and Ditech continued to charge Randall default fees and costs after Randall reinstated his loan.

A " 'debt' " for purposes of section 1692f(1) is an obligation of a consumer to pay money.  (§ 1692a(5); *Vien-Phuong Thi Ho v. ReconTrust Company, NA* (9th Cir. 2017) 858 F.3d 568, 572.)  "[T]he object of non-judicial foreclosure is to retake and resell the security, not to collect money from the borrower."  (*Ho*, *supra*, at p. 571.)  "Thus, actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' " and are not actionable under section 1692f(1).  (*Ho*, *supra*, at p. 572; *Dowers v. Nationstar Mortgage, LLC* (9th Cir. 2017) 852 F.3d 964, 969–970 (*Dowers*).)

However, overcharging Randall to reinstate his loan and charging default fees and costs for a loan that is not in default are attempts to collect money and, consequently, are actionable under section 1692f(1).  Although Ditech asserts Randall's allegations on these points were not sufficiently specific, the particularity required of a pleading varies given the parties' relative knowledge of the facts in issue.  (*Semole v. Sansoucie* (1972) 28 Cal.App.3d 714, 719.)  "[L]ess particularity is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff."  (*Burks v. Poppy Construction Co.* (1962) 57 Cal.2d 463, 474.)  Ultimately, the complaint is sufficient if " 'the adversary has been fairly apprised of the factual basis of the claim against him.' "  (*Semole*, *supra*, at p. 721, quoting *Jones v. Oxnard School Dist*. (1969) 270 Cal.App.2d 587, 593.)  Ditech is in at least as good a

7

position as Randall to know how much Ditech charged him to reinstate his loan, how much Ditech charged him between when he reinstated his loan and when Ditech rescinded the notice of default, and the bases for the charges. Accordingly, we conclude Randall sufficiently pleaded an FDCPA cause of action for violation of section 1692f(1), and the court erred in sustaining Ditech's demurrer to the cause of action.

3

For the first time on appeal, Randall contends he can amend his complaint to also state an actionable claim under section 1692f(6) of the FDCPA for Ditech's nonjudicial foreclosure activity. Section 1692f prohibits "[t]aking or threatening to take any non-judicial action to effect dispossession or displacement of property" when the debt collector has no intention of taking possession of the property, or holds "no present right to possession of the property claimed as collateral through an enforceable security interest." Mortgage loan servicers, as enforcers of security interests, fall within the definition of " 'debt collectors' " for the purposes of section 1692f(6). (*Dowers*, *supra*, 852 F.3d at p. 969; see § 1692(a)(6) [authorizing the application of § 1692(f)(6) to "any business the principal purpose of which is the enforcement of security interests"].) Since Randall has demonstrated he can allege Ditech refused to halt its nonjudicial foreclosure activity until well after he reinstated his loan and then only after he filed the instant action, he has demonstrated he can amend his complaint to state an actionable claim under section 1692f(6) and the court should permit him an opportunity to do so.

B

"The UCL prohibits, and provides civil remedies for, 'unfair competition,' which includes 'any unlawful, unfair or fraudulent business act or practice.' (Bus. & Prof. Code, § 17200.)" (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1155 (*Candelore*).) "The UCL's 'unlawful' prong 'borrows violations of other laws ... and makes those unlawful practices actionable under the UCL.' [Citation.] ' "[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] ... 'unlawful' [prong] violation." ' " (*Ibid.*)

In this case, the complaint did not allege the FDCPA violations as predicates for the UCL cause of action. However, because we conclude the complaint adequately stated a claim under section 1692f(1) of the FDCPA and can be amended to state a claim under section 1692f(6) of the FDCPA, we conclude the complaint can also be amended to state a claim under the UCL and the court should permit Randall an opportunity to do so. (*Candelore*, *supra*, 19 Cal.App.5th at p. 1155.)

IV

DISPOSITION

The judgment is reversed and the matter is remanded to the superior court for

further proceedings consistent with this opinion.  Randall is awarded his appeal costs.


McCONNELL, P. J.

WE CONCUR:



NARES, J.



GUERRERO, J.